SOCIETE DES HUILES D'OLIVE DE NICE v. RORKE.

(Supreme Court, General Term, First Department. November 16, 1894.)

1. TRADE-MARK—RIGHTS OF THIRD PERSONS—FALSE REPRESENTATIONS.

A firm composed of defendant and another was engaged in selling oil manufactured by plaintiff. The oil was put up in packages bearing a certain label, on the face of which was printed the firm name. Afterwards the firm was dissolved, and the property, including the label, was sold at auction, and was purchased by defendant, who thereupon arranged to sell the oil of another manufacturer. He used the label of the late firm, except that the name of the manufacturer was substituted for that of the firm. He also issued a circular stating: "I shall continue to import the oil in the same style packages as heretofore, except that I have made a few slight changes in the label by way of improvement. I

have substituted the name of the producers," etc. *Held*, that there was no representation that the oil sold by defendant was manufactured by plaintiff.

2. SAME—TITLE TO LABEL.
   One D. sold oil manufactured by plaintiff, using thereon a label designed by him while dealing in the oil of another manufacturer, and used by him on that oil, and subsequently on the oil manufactured by plaintiff's vendor. The label did not bear the name of either manufacturer, and it was not claimed that there had ever been a transfer from one to another. *Held*, that the evidence did not show that plaintiff ever obtained title to the label.

Appeal from special term, New York county.

Action by Société des Huiles d'Olive de Nice against James Rorke to restrain the use of a label. From an order denying an injunction pendente lite, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN, J.

George Putnam Smith, for appellant.

Aaron Pennington Whitehead, for respondent.

O'BRIEN, J. The defendant and one Thomas N. Dwyer were partners from February, 1884, until October, 1893, in the wine and olive-oil business, under the firm name of Thomas N. Dwyer & Co. They purchased their oil in Europe, which was put up in cases, tins, and bottles bearing a certain label, concerning the right to use which this controversy arises. The plaintiff's claim was that the oil was manufactured by one Audemard, who in 1887 transferred to the plaintiff his business and property, and that, in the sale of their oils, Dwyer & Co. acted as agents. They used the following label:

Trade  Mark.

# HUILE D'OLIVE
## EXTRA SURFINE VIERGE
## THOMAS N. DWYER & C.O
 NICE

DÉPOSÉ

Guaranteed to be the choicest sublime OLIVE OIL carefully selected and warranted free from any adulteration.
Should be kept in a cool place and not exposed to the action of the sun.

In 1893, Dwyer & Co. dissolved, and the assets were sold at auction by the receivers of the firm, among which assets was included the label that had been used upon the oil, which was purchased by the defendant, who obtained from the receivers a bill of sale or assignment thereof. Thereafter, the defendant, having continued in business on his own account, entered into a contract with another firm at Nice, for oil, which was put up in suitable packages, and upon which was placed the following label:

Trade  Mark.

# HUILE D'OLIVE
## EXTRA SURFINE VIERGE
## LOUIS CAISSON & C$^{IE}$
### NICE

MICHEL LEVY & FILS, ÉPERNAY, 2192.      DÉPOSÉ

Guaranteed to be the choicest sublime OLIVE OIL carefully selected and warranted free from any adulteration.  Should be kept in a cool place and not exposed to the action of the sun.

## PRODUCT OF FRANCE

In a circular to his customers the defendant states:

"I shall continue to import the oil in the same style packages as heretofore, except that I have made a few slight changes in the label by way of improvement. I have substituted the name of the producers," etc.

The use of this label is claimed to be an infringement upon the plaintiff's right, and the portion of the circular quoted is charged to be false and misleading, and intended to impress the public with the fact that the oil now sold by the defendant is the same oil formerly imported by Dwyer & Co.; and it is to enjoin the use of the label and the sending of the circular that the action is brought.

There is a similarity in the labels, but it is to be noticed that, while the plaintiff's has upon it the name of Thomas N. Dwyer & Co., the defendant's has the name of Louis Caisson & Cie, substituted as the producer; and it is clear that this destroys any claim that

there is a representation that the oil now sold by the defendant is manufactured by the plaintiff. Nor can we find that in the wording of the circular there is any distinct false representation, the source from which the oil was obtained being clearly set forth by giving the producer's name. In other respects there is a similarity in the label; and if it were the property of the plaintiff, in which he had acquired a trade-mark, then it is clear that the defendant should not be permitted to use it.

In the affidavit used upon the motion the plaintiff stated that "in or about the month of May, 1884, deponent, who was then in Europe, secured the agency of the house of Felix Audemard, manufacturers and dealers in olive oil, and a certain label was then devised or contrived by said Audemard for a brand of olive oil"; and this is followed by a statement that the labels were thereafter used upon such oil until Audemard sold his property and interest to the plaintiff, who thereafter continued to use the label upon oils exported by it for Dwyer & Co. That this is not a correct statement of the origin of the label is not only apparent from the answering affidavits, but, as we understand it, is now conceded by the plaintiff. It now appears that the label in dispute was devised in 1884 by Dwyer and one Maignen, while traveling in France; that at that time Dwyer & Co. were purchasing olive oil from the firm of E. Normandin & Co., with which firm Maignen was connected; and that the label was used upon the oil so purchased down to July, 1886. During that period it bore upon its face the name of Thomas N. Dwyer & Co., and the name of E. Normandin & Co. was in no way used, the trade-mark appearing to be the property of Thomas N. Dwyer & Co. When Dwyer & Co. began to buy of Audemard, in 1886, no change was made in the label, nor did Audemard's name appear upon it; and it was thus used until 1889, when, Audemard having sold out to the plaintiff, a new contract was made with Dwyer & Co., by which the latter was to sell no oils but those of the plaintiff, and they were to be sold under the brand of "Thomas N. Dwyer & Co." In this agreement the latter firm are styled "agents," but the fact appears that they were merely purchasers of oil. It is not claimed that Normandin & Co. ever transferred the trade-mark in question to Audemard, nor do we find any evidence that Audemard ever undertook to transfer the label to plaintiff, though it might follow, if the title to the label had been shown to be in Audemard, that by reason of the purchase of the business the plaintiff succeeded to his rights in the label.

Apart, therefore, from other questions in the case, we do not think that there is sufficient appearing to show that the plaintiff ever obtained title to the label; and this, we think, would be apparent had the action been brought by plaintiff against Dwyer & Co. prior to the dissolution of that firm to restrain their use of the label. Such labels did not purport to sell the plaintiff's oil, nor was the plaintiff's name in any way upon them or connected with them, the contract being, as already stated, that the plaintiff's oils were to be sold "under the brand of Thomas N. Dwyer & Co."; and, in connection with such sales as were made, the label devised by

Dwyer and another person, in no way connected with the plaintiff or its predecessor, was used. Whether or not, therefore, the defendant acquired any right to use the label upon the purchase from the receiver, we think it clearly appears that the plaintiff had no such right therein as would entitle it to maintain an action to enjoin the defendant from infringing upon its property rights. Upon all the facts appearing, we think the judge below was right, and that the order appealed from should be affirmed, with costs.