**AUGUST STORCK K.G. and Storck USA, L.P., Plaintiffs–Appellees,**

v.

**NABISCO, INC., Defendant–Appellant.**

No. 95–1721.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1995.

Decided May 23, 1995.[*]

Order Denying Rehearing June 9, 1995.

* The opinion was originally released in typescript.

Kevin Charles Trock, Joseph F. Schmidt (argued), Judith L. Grubner, Martin L. Stern, Laff, Whitesel, Conte & Saret, Chicago, IL, for plaintiffs-appellees.

Peter V. Baugher, Steven A. Weiss, Donna M. Maus, Kenneth E. Kraus, Schopf & Weiss, Chicago, IL, James B. Swire (argued), Douglas C. Fairhurst, Helene M. Freeman, Townley & Updike, New York City, for defendant-appellant.

Before BAUER, WOOD, Jr., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

"It happened a long time ago in the little village of Werther. There, the candymaker, Gustav Nebel, created his very finest candy, taking real butter, fresh cream, white and brown sugars, a pinch of salt, and lots of time. And because these butter candies tasted especially delicious, he called the candy 'Werther's Original', in honor of his little village of Werther." So reads the pitch on a bag of Werther's® Original candies. Nabisco surely developed its competing candy a different way—in a chemist's lab, followed by testing in focus groups. Nabisco concluded that Nebel used too much sugar for modern tastes and worries; it substituted isomalt, hydrogenated glucose syrup, and acesulfame potassium. Its packaging of Life Savers® Delites™ screams: *"25% LOWER IN CALORIES THAN WERTHER'S® ORIGINAL\* CANDY"*. August Storck K.G., which makes and sells Werther's® Original, learned about Life Savers® Delites™ from prototype trade samples; the candy is not scheduled for introduction until this coming August. Storck did not appreciate the comparison and filed this suit under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), arguing that Nabisco was about to infringe its trademark and trade dress. The district court issued a preliminary injunction, forbidding Nabisco to use the packaging it has devised. 1995 WL 124262, 1995 U.S. Dist. LEXIS 3486 (N.D.Ill.). Nabisco tells us that if it must come up with new packaging the new candy cannot be introduced until 1996.

The prototype packaging for Life Savers® Delites™ that Storck attached to the complaint used the words "Werther's Original" without either the ® symbol or the asterisk that Nabisco will include in the product offered for sale. The asterisk refers to a disclaimer: "WERTHER'S® ORIGINAL is a registered trademark of and is made by August Storck KG. Storck does not make or license Life Savers Delites™." Nabisco assures us that it does not (and never did) plan to market a product without the ® symbol or disclaimer, and that it told Storck so. Before the district judge issued the injunction, Nabisco gave him a copy of the consumer packaging. The judge remarked that if he had seen Nabisco's revised packaging earlier "the Court's ruling might have been different"—and then issued the injunc-

tion anyway. Yet Nabisco did not yield to the pressure of litigation, demonstrating in the process that an injunction is essential to prevent it from returning to its preferred practices; Nabisco's corporate policy calls for the use of an ® symbol and disclaimer when mentioning rivals' products. That an injunction could have been appropriate to prevent the use of Storck's registered trademark without the symbol and disclaimer does not mean that it is appropriate once the judge learns that all prospect of an improper use has vanished. Quite the contrary, the injunction hampers a form of competition highly beneficial to consumers.

■ We reproduce at the end of this opinion Storck's packaging and Nabisco's proposed packaging. (Nabisco plans to introduce four different Life Savers® Delites™ collections; we show only the two that refer to Storck's product.) It is hard to see how anyone could think that the Life Savers® Delites™ package contains Werther's® Original candies or has anything to do with Storck's product. Life Savers®, one of the most famous brand names in American life, is emblazoned on the package of Life Savers® Delites™; the candy-gulping public will quickly grasp that the point of the diagonal stripe containing the Werther's® Original name is to *distinguish* the two candies—to say that one is different from, and better than, the other. Trademarks designate the origin and quality of products. *Qualitex Co. v. Jacobson Products Co.*, — U.S. —, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995); *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359 (7th Cir.1993); William M. Landes & Richard A. Posner, *Trademark Law: An Economic Perspective*, 30 J.L. & Econ. 265 (1987). A use of a rival's mark that does not engender confusion about origin or quality is therefore permissible. *Prestonettes Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924); *Saxlehner v. Wagner*, 216 U.S. 375, 30 S.Ct. 298, 54 L.Ed. 525 (1910); *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500 (8th Cir.1987); *G.D. Searle & Co. v. Hudson Pharmaceutical Corp.*, 715 F.2d 837 (3d Cir.1983). The use is not just permissible in the sense that one firm is entitled to do everything within legal bounds to undermine a rival; it is beneficial

to consumers. They learn at a glance what kind of product is for sale and how it differs from a known benchmark. Storck does not say that Nabisco's claim is false. That Life Savers® Delites™ are 25% lower in calories than Werther's® Original candies is something consumers may want to know before deciding which candy to buy.

Both the FTC and the FDA encourage product comparisons. The FTC believes that consumers gain from comparative advertising, and to make the comparison vivid the Commission "encourages the naming of, or reference to competitors". 16 C.F.R. § 14.15(b). A "comparison" to a mystery rival is just puffery; it is not falsifiable and therefore is not informative. Because comparisons must be concrete to be useful, the FDA's regulations implementing the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 301 note, prefer that the object of a nutritional comparison be the market leader (a "comparison" to a product consumers do not recognize is as useless as a comparison to an anonymous rival) or an average of the three leading brands. 21 C.F.R. § 101.13(j)(1)(ii)(A). Werther's® Original is the top selling butter cream hard candy, so Nabisco's claim follows the FDA's guideline.

Under the circumstances, the district judge's statement that the use of the Werther's® Original mark on the Life Savers® Delites™ package creates a "possibility" of confusion cannot support an injunction. Many consumers are ignorant or inattentive, so some are bound to misunderstand no matter how careful a producer is. See *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1258–60 (7th Cir.1994) (concurring opinion). If such a possibility created a trademark problem, then all comparative references would be forbidden, and consumers as a whole would be worse off.

■ Likelihood of confusion in a trademark case is a factual issue, and appellate review is deferential. *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir.1985). But the district court did not hold an evidentiary hearing. Nabisco and Storck informed us at oral argument that to this day

no one has conducted the surveys customary in trademark cases, showing the packaging or product to consumers and asking: "Who makes this?" or "Are these two products made by the same firm?" Perhaps the packages are confusing after all; we make little of the disclaimer, which few consumers will read. *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir.1988). But all the district court found—all that it could find on this record—is that Nabisco's packaging uses Storck's mark and that confusion is possible. That is not enough to postpone the introduction of a new product. When deciding whether to grant or withhold equitable relief a court must give high regard to the interest of the general public, which is a great beneficiary from competition. Although the benefits of competition do not justify the introduction of products that engender substantial confusion, see *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 18–19 (7th Cir.1992), when the plaintiff's showing is as thin as Storck's the interests of the public carry the day. Damages in trademark cases are hard to measure, but the possibility of compensation offers sufficient protection to a trademark owner, when an injunction bids fair to stifle competition and injure consumers in order to ward off occasional confusion. Even substantial deference to the district court's balancing of the equities cannot save an injunction when the judge overstates the private injury and disregards the public interest in competition. See *Abbott Laboratories*, 971 F.2d at 11–13; *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986); *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593–94 (7th Cir.1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 387–88 (7th Cir.1984).

■ Storck argues not only that Nabisco infringes its trademark but also that the Life Savers® Delites™ package infringes its trade dress. Quoting from *Storck USA, L.P. v. Farley Candy Co.*, 797 F.Supp. 1399, 1406 (N.D.Ill.1992), the judge concluded that "the overall appearance of the Werther's Original package, including the layout of the trade dress elements, creates a distinctive and arbitrary visual impression." The "trade dress elements" the judge had in mind apparently are those in the "Old World Recipe" inset, which shows a quaint village behind two pitchers pouring white fluids together. We say "apparently" because the judge did not describe the "trade dress elements"; but we cannot suppose that he meant the mound of unwrapped candies that occupy the bottom third of the package, because he crossed out of Storck's proposed injunction a prohibition on using a package depicting a mound of candies. Having held that Storck's "trade dress elements" are distinctive, and therefore protectable without proof of secondary meaning, *Two Pesos, Inc. v. Taco Cabana, Inc.*, —— U.S. ——, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992), the district court immediately concluded that Storck is entitled to relief; it did not explain how or to what extent Nabisco's packages use the protected elements. The court stated, without supporting reasoning, that "the likelihood of confusion is a possibility as Nabisco's package is currently designed." Once again, the district judge apparently believed that a "possibility" of confusion justifies a restriction on competition, which it does not. The lack of findings makes deference impossible and the injunction untenable.

■ The Life Savers® Delites™ butter toffee package shows a pitcher, an urn of milk, a stick of butter, and a mound of candies against a pastel yellow background; the vertical stripe is green. The "European Collection" package shows a butter churn, a coffee grinder, leaves of mint, and a mound of candies against a strawberry background; again the vertical stripe is green. Neither package shows two fluids being poured together in front of a picturesque town, the element that the district court in *Farley Candy* thought distinctive. Neither package uses Storck's color (a cream brown or tan). All of Nabisco's packages have a bold vertical stripe, in contrasting color, that Storck's lacks. Nabisco's packages are about half the size of Storck's and are taller than they are wide; Storck's is wider than it is tall. Both packages have banners, which are common graphic elements. Nabisco uses a convex yellow banner, with blue lettering, at the bottom center of the package; Storck uses a concave brown banner, with white lettering,

in the upper left. The device of a banner is not independently protectable. *Storck USA, L.P. v. Farley Candy Co.*, 821 F.Supp. 524, 529 (N.D.Ill.1993), affirmed, 14 F.3d 311 (7th Cir.1994). And these banners are not similar.

Doubtless the overall appearance is what matters. *Kohler Co. v. Moen, Inc.*, 12 F.3d 632, 641 n. 11 (7th Cir.1993). Dissecting a product or package into components can cause a court to miss an overall similarity. *Two Pesos,* —— U.S. at ——, 112 S.Ct. at 2758; *Scandia Down,* 772 F.2d at 1431; *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 936 (7th Cir.1989). But neither survey evidence nor testimony in this record supports a conclusion that consumers would see these packages as similar in any respect beyond the mound of candies—which is such a common visual cue to the product inside, and so obviously functional, that it cannot be a protected trade dress. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.,* 870 F.2d 1176, 1190 (7th Cir.1989). The differences between the packages are so great that it is impossible (on this record) to believe that Nabisco is taking advantage of Storck's goodwill, or even that its industrial designers have taken a free ride on the work of Storck's graphic arts department. It may be that after a full trial the record will support Storck's claims; the current record does not.

The preliminary injunction is reversed. So that Nabisco may proceed with the introduction of Life Savers® Delites™ on schedule, the mandate will issue today.

ATTACHMENT

**Nutrition Facts**

Serving Size 3 Candies (16g)
Servings Per Container
About 5

Amount Per Serving

Calories 45

% Daily Value*

Total Fat 2g — 3%
Saturated Fat 1g — 6%
Cholesterol 5mg — 2%
Sodium 8mg — 4%
Total Carbohydrate 17g — 4%
Sugars 0g
Sugar Alcohol 14g
Protein 0g

**25% LOWER IN CALORIES THAN WERTHER'S® ORIGINAL* CANDY**
SEE BACK PANEL FOR NUTRITION INFORMATION

**LIFE SAVERS**
*Delites*
SUGAR FREE
HARD CANDY

Butter Toffee

NET WT.
2.75 OZ. (78g)

NABISCO

9 49000 08304

**LIFE SAVERS**
*Delites*
Butter
Toffee

*Now Life Savers introduces a rich, creamy, indulgent candy that's also sugar-free!*

*Put the individually wrapped pieces in your candy dish, in lunch bags, or in your pocket. You can enjoy the delicious taste anywhere.*

*Life Savers Delites Sugar Free hard candy contains 45 calories per 15-gram serving as compared to 60 calories per 15-gram serving for Werther's® Original* candy.*

## Order

### June 9, 1995

Plaintiffs–Appellees filed a petition for rehearing on June 2, 1995. All of the judges on the panel have voted to deny the petition for rehearing. The petition for rehearing is therefore DENIED. Neither this disposition nor the court's original opinion stands as an obstacle to a renewed application for relief should Nabisco begin to use Storck's mark without a proper symbol and disclaimer. Any threat of improper usage can be dealt with by the district court.