### INTERNATIONAL HEATING CO. et al. v. OLIVER OIL GAS BURNER & MACHINE CO.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1923.)

No. 5971.

1. **Trade-marks and trade-names and unfair competition** ☞68—**There can be no monopoly in the language of advertisements.**

There can be no monopoly of descriptive language, and the showing of prepared advertising copy by a manufacturer to another is not a confidential communication with respect to the language used.

2. **Trade-marks and trade-names and unfair competition** ☞88—**Use of information wrongful only where informant had exclusive right therein.**

A party complaining of a wrongful use of confidential information must have some right to or in the subject-matter of the information claimed to be confidential.

3. **Trade-marks and trade-names and unfair competition** ☞75—**Deception of customers is essence of unfair competition.**

Unfair competition begins where imitation results in the deception of the customers of the party complaining.

4. **Trade-marks and trade-names and unfair competition** ☞68—**Use of same language in advertisements held not to constitute unfair competition.**

Where complainant manufacturing company published advertisements for the purpose of inducing persons reading the same to communicate with it with respect to the article advertised, the use by defendant of similar or the same language in advertisements of a similar article *held* not to constitute unfair competition, where the articles were given distinctive names, and the names and addresses of the manufacturers were made prominent.

Appeal from the District Court of the United States for the Eastern District of Missouri.

Suit in equity by the Oliver Oil Gas Burner & Machine Company against the International Heating Company and others. Decree for complainant, and defendants appeal. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

F. W. Lehmann, of St. Louis, Mo. (Anderson, Gilbert & Wolfort, of St. Louis, Mo., on the brief), for appellants.

Wilbur B. Jones, of St. Louis, Mo., for appellee.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge. Appellee was plaintiff in the court below. It brought the suit to restrain unfair competition and for an accounting of profits. Plaintiff company was organized early in 1918, with its principal place of business in St. Louis, Mo. Since its organization plaintiff has carried on the business of manufacturing and selling oil and gas burners, which it has brought to the attention of the public through advertisements in various newspapers, magazines, and periodicals. Plaintiff has sold its burners principally through soliciting agents, but it does a mail order business also, and has disposed of some of its burners directly to customers. In the conduct of its business plaintiff made up lists of customers and prospective customers, which lists were furnished to and used by its agents. These lists were also used by plaintiff in its mail order business. Shortly after the organization of the company, the defendant Grafe was employed by the plaintiff to assist in the conduct of the business in the St. Louis office. He became familiar with and made use of the lists of customers above mentioned. He assisted the general manager in preparing advertising copy. Sometimes, in the absence of the general manager, he alone prepared the copy. About the 1st of February, 1920, the defendant Grafe left plaintiff's service, and shortly thereafter, with others, organized the defendant company, with its principal place of business in St. Louis. The defendant company immediately began to manufacture and sell oil and gas burners similar to plaintiff's burners. Grafe was manager of the business. The defendant company adopted plaintiff's plan of business; that is, it advertised its burners in newspapers, magazines, and periodicals, sold through soliciting agents, and did a mail order business directly with customers.

The unfair competition alleged in the complaint is: (1) That the defendant Grafe, while in plaintiff's service, made copies of the lists of plaintiff's customers above mentioned; that he delivered these copies to the defendant company, and the defendant company was using these lists to sell its burners to plaintiff's customers. (2) That the defendant company, in the advertisements of its burners in newspapers, magazines, and periodicals, has imitated those published by plaintiff, and has made them so similar in appearance and wording to plaintiff's that the ordinary person, reading defendants' advertisements, would be deceived and believe that he was reading the advertisements of plaintiff, and that the public is necessarily and intentionally deceived and led to purchase the product of the defendant company, believing it to be the product of plaintiff.

Upon the final hearing, the trial court, upon the first ground, found for defendants; upon the second ground, for plaintiff. It thereupon granted an injunction and ordered an accounting of profits. It should be noted that there is in the case no question of trade-mark or trade-

name, or of imitation of plaintiff's burner or of the dress in which it is presented to the public.

In his brief, counsel for plaintiff repeatedly charges the defendant Grafe with bad faith. The evidences of bad faith, put forward and commented upon in the argument, are that Grafe, while still in plaintiff's service, planned the organization of a competing business, opened the books of plaintiff to strangers for the purpose of inducing them to join him in organizing the defendant company, kept copies of all advertising literature, instructed a subordinate not to answer letters from complaining customers, burned plaintiff's paragraph book, left plaintiff's service in violation of his agreement to remain for another year, and after leaving plaintiff's service Grafe said the almighty dollar was his god and he would "get" plaintiff's business, appropriated and used in the advertisements and advertising literature of the defendant company certain words, phrases, and sentences, and also in general outline the pictorial representations, appearing in plaintiff's advertisements, advertising copy, and literature, duplicated plaintiff's plan of advertising campaign for 1920 as outlined to him while still in plaintiff's service by the general manager, organized the defendant company, "not so much to build up a business of his own," but "by using everything of plaintiff company which he could * * * 'to get the Oliver Company and put it out of business.'" These evidences of bad faith are put forward, not as independent causes of action, but to buttress and reinforce the cause of action alleged in the complaint of unfair competition by imitation of plaintiff's advertisements, etc. Counsel in his brief says:

"The purpose of this suit is to stop the deception at the first point of contact with the public, to wit, when the public sees the advertisement and then gets the follow-up literature in answer to inquiries."

And:

"We feel that in the instant case are several elements, the proof of one of which in other cases has been sufficient to warrant an injunctive decree, but the several elements so combined here demand as the only just and equitable thing that can be done to stop this unfair and irreparable withdrawal by Grafe and his associates of plaintiff's business, is to hold aloft the strong arm of equity which was interposed by the District Court below."

It is only fair to say the statement that Grafe organized the defendant company "not so much to build up a business of his own," but "by using everything of plaintiff company which he could * * * 'to get the Oliver Company and put it out of business,'" is without support in the evidence.

Plaintiff's cause of action is that the defendant company, in the advertisements of its burners in newspapers, magazines, and periodicals, has imitated those published by plaintiff, and has made them so similar in appearance and wording to plaintiff's that the ordinary person reading defendants' advertisements would be deceived and believe that he was reading the advertisements of plaintiff, and that the public is necessarily deceived and led to purchase the product of the defendant company, believing it to be the product of plaintiff. If Grafe did all the things he is charged with doing, in what way is plaintiff's case

strengthened? His conduct may have been unethical, and reprehensible, but the things he is charged with doing, whether considered singly or together, do not in the remotest degree tend to prove that the advertisements of the defendant company were so similar in appearance and wording to plaintiff's that the ordinary person reading those of the defendant would be deceived and believe that he was reading the advertisements of plaintiff.

[1] Let it be conceded, as claimed by plaintiff, that Grafe appropriated and used in the advertisements and advertising literature of the defendant company certain words, phrases, and sentences, and in general outline the pictorial representations appearing in plaintiff's advertisements and advertising literature, what right of plaintiff was encroached upon? It seems to be plaintiff's contention that the language of its advertisements, advertising copy and literature used during the years 1918 and 1919 which Grafe prepared or assisted in preparing, and the language of advertising copy intended for use in 1920 which the witness Oliver testified he showed to Grafe in January, 1920, were confidential information which Grafe had no right to use in preparing the advertisements and advertising literature of the defendant company. It should be kept in mind that the use of plaintiff's lists of customers by the defendant company is the only wrongful use of confidential information alleged in the complaint; but, waiving this, let us consider for a moment the novel contention that ordinary descriptive language may be the subject-matter of confidential information.

[2] Words are but symbols. In combination they express ideas. They are not information; they convey information. Information conveyed by words may be confidential, not the words. There can be no monopoly of descriptive language. Viavi Co. v. Vimedia Co., 245 Fed. 289, 157 C. C. A. 481; S. R. Feil Co. v. John E. Robbins Co., 220 Fed. 650, 136 C. C. A. 258; Trinidad Asphalt Mfg. Co. v. Standard Paint Co., 163 Fed. 977, 90 C. C. A. 195; Caswell et al. v. Davis, 58 N. Y. 223, 17 Am. Rep. 233. No one may invoke the law of confidential information to deprive another of the right to choose his words. The party complaining of a wrongful use of confidential information must have some right to or in the subject-matter of the information claimed to be confidential, as, for instance, the formula of a proprietary medicine (C. F. Simmons Medicine Co. v. Simmons [C. C.] 81 Fed. 163), or the right may relate to business connections (as in Merchants' Syndicate Catalog Co. v. Retailers' Factory Catalog Co. [D. C.] 206 Fed. 545). If the defendant company has been guilty of unfair competition, it is not because of the wrongful use of confidential information acquired by Grafe during his employment by plaintiff, but because of imitation of plaintiff's advertisements and deception of the public.

[3, 4] We have carefully studied all of the exhibits in evidence, and are convinced that no reasonable person, previously acquainted with plaintiff's advertisements, would be misled by anything appearing in the advertisements of the defendant company. Unfair competition begins where imitation results in the deception of the customers of the party complaining. In this case, the customers of plaintiff were those who read its advertisements, and who made inquiry through the mails

with the view of becoming agents for the sale of plaintiff's burners or purchasers for personal use. In every advertisement found in the record, each party made prominent its name and address, as well as the distinctive name of its burner, plaintiff's being called the "Oliver Oil Gas Burner," and that of the defendant company, "Instant Gas Oil Burner." Each has a cut showing a woman by a stove, but the similarity is not such as to mislead. Especially is this true when it is remembered that we are here dealing with advertisements, and not with the dress in which the burners of the respective parties were offered to customers over the counter by retail dealers. Similarity of dress is enjoined as unfair competition, because customers, calling for an article, do not stop to read printed names and addresses, or to observe differences which may distinguish the simulated article from the one called for. They are satisfied with general appearances. But a customer obtained through an advertisement must of necessity read the advertisement to become acquainted with the article advertised and to know the name and address of the advertiser. Plaintiff's advertisements describe the Oliver oil gas burner and give plaintiff's name as Oliver Oil Gas Burner & Machine Company, with its address. The advertisements of the defendant company describe the Instant gas oil burner and give its name as International Heating Company, with its address. No sensible person acquainted with plaintiff's advertisements would believe that the defendant company was advertising and selling plaintiff's burner. Standard Paint Co. v. Trinidad Asph. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536; Howe Scale Co. v. Wyckoff, Seamans, etc., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972; Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; Dare v. Foy, 180 Iowa, 1156, 164 N. W. 179.

The judgment is reversed, and the court below directed to dismiss the action. Costs to appellants.