68 N.J. Super. 321 (1961)
172 A.2d 246
CASCADE POOLS CORP., A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
CONSOLIDATED POOLS & EQUIPMENT CORP., A CORPORATION OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 21, 1961.
*322 Mr. George B. Gelman argued the cause for plaintiff (Messrs. Garvey, Gelman & Hollander, attorneys).
Mr. Jerome C. Eisenberg argued the cause for defendant (Messrs. Clapp & Eisenberg, attorneys).
*323 HERBERT, J.S.C.
The plaintiff has moved for an interlocutory injunction to prevent the defendant from using certain advertising material.
Both parties sell swimming pools and accessories for pools. The particular feature of their competition which produces this case is that both are marketing materials which a home owner can use to build a relatively inexpensive back-yard pool. These materials are included in a kit or "package," the basic features of which are wooden panels or walls (chemically treated to resist decay) and vinyl plastic lining material. Having decided upon this type of pool, the home owner digs a hole of the appropriate size in his yard, and then, using the kit of materials he has bought, installs the wooden side walls and puts the vinyl plastic in place as a water-holding liner over walls and dirt floor. He follows a set of directions furnished with the materials. The owner can, of course, do the work with the help of his family and friends, or he can employ workmen to do it for him.
The foregoing description of a wooden-walled, plastic-lined pool is oversimplified, but is sufficient for present purposes. Neither the plaintiff nor the defendant claims any patents, trade secrets, franchises, licenses or other exclusive property rights in such a pool. Other companies market them, several in this area being named in the answering affidavit of Mr. Stone, the defendant's president. Mr. Stone says that the sale of wooden walls and vinyl liners for the construction of private swimming pools has been going on since about 1950.
The plaintiff states, by complaint and verifying affidavit, that at considerable expense it "has caused to be published articles and stories" in magazines and newspapers as promotional advertising. Specifically three publications are mentioned:
(a) Reader's Digest, May 1960  an article entitled "The Big Splash in the Back Yard" by David X. Manners, condensed from Suburbia Today. This article, which is *324 short, describes various types of pools, but emphasizes the merits of the type constructed with the plastic liner.
(b) Sunday New York News, Coloroto Magazine, July 10, 1960  a double page of pictures accompanied by a few paragraphs of text. The pictures show a wooden-walled, plastic-lined pool in various stages of construction and in use. The title and subtitle of the article are "Pooling their efforts. Do-it-yourself pool is put up by Jersey couple (plus neighbors) in three and a half days." The plaintiff states without contradiction that these pictures show one of its pools, the owner being "a public relations agent employed by the plaintiff."
(c) The Family Handyman, April 1961, page 27, et seq.  an article entitled "Do-it-yourself Below-the-ground Pool." The numerous pictures illustrate steps in the construction. The plaintiff states without contradiction that these pictures show one of its pools being installed by its vice president, Mr. West, and its production manager, Mr. Kirk.
None of the publications mentioned would be regarded by the average reader as advertising material. In exercising its ingenuity and spending its money to get these articles prepared, written and published the plaintiff was necessarily promoting public interest in all pools to which the published material would apply. In none of the articles is there any mention of the plaintiff's name or any statement that the pools and pool components shown can be obtained from the plaintiff. Parenthetically, it is noted that the plaintiff's name does appear in The Family Handyman, April 1961, but not as part of the article on pools. It is found near the back of the magazine (at p. 78) in a column relating to products described in the text. Also, two life preservers shown hanging on the wall of a building in one of the pictures in the Sunday New York News bear the words "Buster Crabbe Pools" and these words, it was said in argument, are used as a brand name by the plaintiff. In the picture, however, they are so illegible as to have no meaning at all to a reader of the newspaper even if he *325 should notice them, which is very unlikely. Neither the mention of the plaintiff at the back of The Family Handyman, nor the showing of life preservers bearing a brand name which at best can be read only by one who has been told in advance what the name is, infringes upon the general conclusion that these three published articles are not in any usual sense advertising of or for the plaintiff or its products, but are publicity from which every seller of this type of pool kit will benefit.
The plaintiff complains that the defendant has obtained many reprints of the articles mentioned and is using those reprints for advertising purposes. The reprint from the Reader's Digest entitled "The Big Splash in the Back Yard" (copy attached to the complaint as exhibit) does not in any way attempt to identify the defendant, or the plaintiff, with any pools or materials for pools described in the text. The plaintiff has no basis for objecting to the use of this reprint in this form by the defendant or by anyone else in the pool business, even though plaintiff has invested money and effort in getting the article written and published.
The reprints of the other two articles are in a form which differs in one respect from the Reader's Digest material. They both have additions to the material originally published which in my judgment suggest rather strongly to the reader that the pools described and pictured are the pools of the defendant. As shown by the exhibits attached to the complaint, the defendants are using as advertising material two versions of a reprint of the Sunday New York News article. One version omits the text of the short article which accompanied the pictures, but retains the title of the article and uses all of the pictures and the descriptive wording applicable to each one. At the top of the double page of the reprint the defendant has caused to be added "Consolidated Pools & Equipment Corp. 1710 Elizabeth Avenue East, Linden, New Jersey WAbash 5-4650." Beneath this there is nothing but material taken from the Sunday New York News. The plaintiff states that this version of the *326 reprint has been used in the catalogue of the defendant and in that way is further identified with the defendant and its products.
The other version of the Sunday New York News article includes the title, the short text, the pictures and the descriptive material under each picture. Across the top of this double page the defendant's name, address and telephone number are printed in the same form as I have indicated above. This version also has a cover, or jacket, on which the defendant's trade-mark and name appear above the words, in large type, "National Recognition and Publicity." On the back of this jacket there are statements about a guarantee which can only be taken to mean the guarantee of the defendant.
Defendant's reprint of the article from The Family Handyman contains the title, text and pictures used in the magazine, but at the top of the first page a new title, or caption, has been added in large type: "Consolidated Presents a Revolutionary New Concept in Pool Building." On the back page, or cover, of this reprint the defendant has printed comparative data about various types of pools, and has included several references to Consolidated pools.
It will be helpful to state, or restate, a number of factual conclusions:
(a) The three magazine articles the plaintiff arranged to have published did not advertise the plaintiff's name or products, nor did they advertise or establish for any product of the plaintiff, or any features of such product, a secondary meaning which would in the public mind associate the product with the plaintiff. They did publicize wooden-walled plastic-lined swimming pools as marketed by the plaintiff, the defendant and other firms.
(b) The defendant has been using and proposes to use reprints of the Sunday New York News article and The Family Handyman article in such form as to indicate to its dealers, prospective dealers and the public that the swimming pools pictured and described in those publications are *327 its pools. This identification of the defendant with the pools in the articles has been created by adding the defendant's name, address and trade-mark to the reprint material, in the way I have already described. Though the defendant has misrepresented in this way, and proposes to continue to do so, that its pools are the ones written about and pictured in the articles, there is no proof whatever that the text and pictures of the articles would not apply to the essential features of the defendant's pools. The misrepresentation is that the defendant's products have been singled out for attention by important publications when in fact they have not, rather than a misrepresentation as to quality or features of the products.
(c) Because the magazine articles are not identified in text or pictures with the plaintiff or its products in any way which is recognizable by the public, it follows that the defendant's use of its reprints will not have the effect of holding out or misrepresenting its products as those of the plaintiff. In short, the proofs offered in support of the application for an interlocutory injunction do not bear out the plaintiff's allegation that the defendant "has been and is passing off its products as those of the plaintiff." A reader of the defendant's reprint of the Sunday News article or the Handyman article is likely to be deceived into thinking that text and pictures describe and show the defendant's products, but there is nothing to lead him on, whether he is dealer or homeowner, to a false identification of the defendant and its products with the plaintiff and its products. From the reprint material he will not learn the name of the plaintiff or that there are such things as "Buster Crabbe Pools."
(d) The defendant offers a somewhat ambiguous denial that it knew the article in the Sunday News related to one of the plaintiff's pools. I am inclined to think that the defendant either knew or found out promptly whose pool was portrayed. In any event, the Handyman article pictured two officials of the plaintiff who must have been known to the defendant, and the magazine printed the plaintiff's *328 name and address in its column entitled "What it's called and where to buy it." In addition, when the defendant added material to the reprints of the Sunday News and Handyman articles for the purpose of identifying its products with those described in the respective texts and shown in the pictures, it, of course, knew that the products of another firm had been used as the models for the articles and must have realized that another firm or firms had given to the writers the technical and general information used.
That the plaintiff was responsible for the preparation and publication of the three magazine articles is no basis for relief. Though the plaintiff acted in self-interest, the articles were bound to benefit all firms marketing this type of pool. The material printed by the magazines can be reprinted and used by anyone without interference by the plaintiff. It is hardly necessary to add that no point is made about possible rights of the magazine publishers to object. In fact, the defendant bought from the publisher its stock of reprints of the Sunday News article.
Then can the plaintiff enjoin the use of reprints of the Sunday News and Handyman articles because those reprints are in a form which falsely represents that the defendant's pools are the ones written about and pictured? There is no general right to enjoin the false advertising of a competitor. Handler, "False and Misleading Advertising," 39 Yale L.J. 22, at pp. 34-42 (1929); 1 Callman on Unfair Competition and Trade-Marks (2d ed. 1950), pp. 297-307; IV Restatement, Torts, sec. 761. Prosser on Torts (2d ed. 1955), contains the following statement, at pp. 753-754:
"Misbranding, and false advertising, in particular, have been held to be a fraud only upon the public, for which the competitor has no redress at common law, notwithstanding the damage which his own business or even an entire industry may suffer as a result of it. It is only where the plaintiff can show, by virtue of some exclusive position, that any diversion of custom by false advertising has damaged him, that his action has been permitted. The Federal Trade Commission, which has jurisdiction over unfair competition by false advertising, has been upheld in many attempts to deal with it."
*329 Had the material printed in the three magazines been advertisements for the plaintiff and its products, there would still be grave doubts about enjoining its appropriation by the defendant. The general rule is stated in 87 C.J.S. Trade Marks, Etc. § 119, p. 400:
"Unfair competition may be effected by means of circulars or advertisements; and circulars, advertisements, or other announcements calculated to deceive the public and pass off the defendant's goods or business as the goods or business of the plaintiff will be enjoined."
Essentially the same proposition is expressed in another form in 52 Am. Jur., sec. 116, page 595, as follows:
"The general rule is that the appropriation of another's advertising matter or methods is not of itself unfair competition, although it may become such where it induces or may induce the public to suppose that in dealing with the appropriator they are dealing with or obtaining the product or services of the originator."
Also see Benjamin T. Crump Company v. J.L. Lindsay, Inc., 130 Va. 144, 107 S.E. 679, 17 A.L.R. 747 (Sup. Ct. App. 1921), and annotation, and International Heating Company v. Oliver Oil Gas Burner & Machine Company, 288 F. 708, 30 A.L.R. 611 (8 Cir. 1923), and annotation. And Mumford Machine Co. v. E.H. Mumford Co., 88 N.J. Eq. 178 (Ch. 1917), although it involved several other questions, is a New Jersey example of injunctive relief against use of catalogue material and advertising matter designed to pass off the defendant's products as those of another. Squeezit Corporation v. Plastic Dispensers, 31 N.J. Super. 217 (App. Div. 1954), may also be cited to show that an element of identification between a plaintiff's product and that of a defendant must exist before equitable relief can be granted. That case did not, however, involve advertising material.
In the present case, as already noted, the defendant has not by use of the reprints passed itself off to the public as the plaintiff or passed off its products as those of the plaintiff; nor has it misrepresented qualities and features of its *330 pools or of the plaintiff's pools. And no question of secondary meaning is involved.
With all of the elements absent which would make the use of appropriated advertising subject to injunction, it follows that no interlocutory relief should be granted where the magazine material reprinted is not the plaintiff's property and is not even advertising.
The plaintiff also charges that the defendant has reproduced and used a drawing contained in an installation manual of the plaintiff, copyrighted by Spiegel, Inc. (not a party to this suit), without the permission of the copyright holder or of the plaintiff. Mr. Stone, defendant's president, denies this charge, but he is either discussing a different drawing or is unworthy of belief. A comparison of defendant's drawing as attached to the complaint and the Spiegel drawing makes it obvious that one has been copied from the other. However, there is nothing about the details of the Spiegel drawing to identify in any way with the plaintiff the partly-finished pool which is depicted. Whatever the morals of the situation, material of this sort may be appropriated by others without giving the original user any cause of action. In Struhl, Inc. v. Relaxor Cushion Corporation, 161 F. Supp. 826 (S.D.N.Y. 1958), sketches used in advertising which was published to promote the sale of the plaintiff's vibrator pillow were used in almost identical form in advertising the defendant's pillow. There being no element of secondary meaning involved and no proof that the sketches would be likely to deceive the public and pass off the defendant's goods as the plaintiff's, injunctive relief was denied. Also see the authorities cited above relating to the general subject of appropriated advertising material. Although the drawing in question was copyrighted by Spiegel, Inc., whether there is a valid copyright and whether it has been infringed are questions which appear to lie exclusively within the jurisdiction of the federal courts. 21 C.J.S. Courts § 525, p. 794.
The plaintiff's application for an interlocutory injunction is denied.